CITY OF GARDINER vs. INHABITANTS OF MANCHESTER.

.Kennebec.    Opinion January 10, 1896.

*Pauper. Collusive Marriage. Minor Children. R. S., 1871, c. 24, § 1;*
*1883, c. 24, § 1.*

A marriage is valid without any certificate of intention being obtained as required by law, when solemnized by a duly authorized magistrate.

A female pauper, having a settlement in Manchester, was married in 1878 to a pauper having a settlement in Gardiner. *Held*; that under the statute then in force, R. S., 1871, c. 24, § 1, if the marriage was collusive for the purpose of changing the settlement of the wife and so inoperative for that purpose, the children would take the settlement of the husband.

The pauper status of the children of that marriage is determined by the law as it stood at the date of the marriage.

*Held*; that the father's settlement being in Gardiner, the children who were then minors and who were born illegitimate before the marriage, having become legitimate by the subsequent marriage, and those born subsequently, had their pauper settlement in Gardiner by derivation from the father.

*Held*; that the evidence fails to establish the allegation that the marriage was procured to change the wife's settlement; she, therefore, took her husband's settlement which was in Gardiner.

*Houlton* v. *Ludlow*, 73 Maine, 583, affirmed.

ON REPORT.

This was assumpsit on account annexed to the writ dated November 2, 1894, to recover for pauper supplies, furnished Elizabeth (Howard) Hutchinson and seven minor children, widow of George Hutchinson. Plea, general issue. It was admitted that on June 28, 1878, George Hutchinson had a pauper settlement in the city of Gardiner, and Elizabeth M. Howard, a pauper settlement in the town of Manchester.

The plaintiff contended that the marriage of Elizabeth (Howard) Hutchinson to George Hutchinson, on June 28, 1878, was procured by the agency or collusion of I. N. Wadsworth, chairman of the board of selectmen of Manchester, deceased. Mrs. Hutchinson, called by the defendants testified: . . .

"I remember the fact of my marriage in Manchester by Mr. Wadsworth and the circumstances connected with it. We went to Manchester with a horse and carriage from my mother's on Malta Hill in Augusta and found Mr. Wadsworth at work in a field right side of the road.

"Ques. Prior to the performance of that marriage ceremony by Mr. Wadsworth, had Wadsworth or any town officer of Manchester or anybody coming to you from them, suggested to you the idea that you should be married?

"Ans. No, sir, in no way or shape. No one had spoken to us, and I don't think anyone in Manchester knew anything about it. I went out and told Mr. Wadsworth myself.

"Ques. In other words, is this the fact: that your going there with George Hutchinson and your being married was entirely your own matter and not suggested to you in any way by Mr. Wadsworth or any other town officer, or any person representing or acting for the town of Manchester?

"Ans. No, sir, it was not anyone in Manchester whatever; it was wholly my own matter.

"Ques. What did you say to Wadsworth?

"Ans. I told Wadsworth that I wanted him to marry us; that they would not give me any certificate in Gardiner, and I wanted him to marry us, and he said all right. I asked him to perform the marriage ceremony. I did not ask his advice about it and he did not suggest it to me. He did not in any way, shape or how suggest it or advise it or ask me to get married. I had been living with George seven or eight years prior to my marriage; I had lived with him, in the same house, without marriage." . . . . .

Other facts appear in the opinion.

*W. C. Atkins*, city solicitor,
*A. M. Spear and W. D. Whitney*, for plaintiff.
*H. M. Heath and C. L. Andrews*, for defendants.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

STROUT, J.  Action for pauper supplies furnished to Elizabeth M. Hutchinson and her seven minor children.  The contention is whether the pauper settlement was in Gardiner or Manchester.  It is admitted that, on June 28, 1878, Elizabeth M. Howard had a pauper settlement in Manchester, and George L. Hutchinson a pauper settlement in Gardiner.  On that day the parties were married.  They had previously lived together, and children had been born of that cohabitation.  It is claimed by plaintiff that the marriage was procured by Isaac N. Wadsworth, then chairman of defendant town, for the purpose of changing the settlement of Elizabeth M. Howard, from Manchester to the town in which her husband had a pauper settlement. It appears that the marriage was solemnized by Mr. Wadsworth, without any certificate of intention of marriage being obtained as required by law ; and he thereby became liable to the penalty provided by the statute.  The marriage, however, was valid. *Damon's case*, 6 Maine, 150 ; *Milford* v. *Worcester*, 7 Mass. 55. Its only infirmity was in its effect upon the pauper settlement of the wife.  The marriage occurred in 1878.  At that time R. S. of 1871, c. 24, § 1, was in force.  That statute did not contain the clause in the present revison, that "no derivative settlement is acquired or changed by a marriage so procured." That clause was added in 1883.  The status of the children as to settlement, is determined by the law as it existed at the date of the marriage.  At that time a marriage procured to change a settlement affected only the settlement of the wife, and not that of her children by her husband.  This construction is in accordance with the language and intent of the statute then in force.  It has been expressly so held by this court in *Houlton* v. *Ludlow*, 73 Maine, 585 ; *Minot* v. *Bowdoin*, 75 Maine, 210.

At the time of the marriage, the wife had minor children by Hutchinson.  The subsequent marriage made these children legitimate, and gave them the settlement of the father.  R. S. of 1871, c. 24, § 1, clause 3.  The children born subsequently took the settlement of the father by R. S. of 1871, c. 24, § 1, clause 2, and R. S. of 1883, c. 24, § 1, clause 2.  The father's settlement being in Gardiner, the children who were then minors and who

were born before the marriage, having by the subsequent marriage become legitimate, and those born subsequently, had their pauper settlement in Gardiner, by derivation from the father. The two children born since the amendment of the law in 1883, are unaffected by that amendment. The pauper status of the parents, and derivative settlements of their children, were established by the law existing at the date of the marriage.

The pauper settlement of the wife depends upon the question whether the marriage was procured to change her settlement, by the agency or collusion of the officers of Manchester; if not, then she took the settlement of her husband,— R. S. of 1871, c. 24, § 1, clause 1,— if he had one in this State. He did then have a settlement in Gardiner.

Was the marriage fraudulently procured? for it would be fraudulent, if procured for the purpose of changing a settlement. Fraud is never presumed, but must be proved, not necessarily by direct and positive testimony, but the evidence must be sufficient to satisfy the mind of its existence. As early as June, 1870, the intention of marriage between the parties was duly entered in the clerk's office of Gardiner; but no certificate was issued because the mayor forbade the issue; but no proceeding was had thereunder as provided by R. S. of 1871, c. 59, § 8. The parties continued to live together as husband and wife till their marriage in 1878. Meantime children had been born to them. It may well be, that the mother was anxious to make her children legitimate by marriage, and to escape a possible prosecution for illegal cohabitation, as well as the disgrace attending the illicit connection. She is the only witness who testifies to the circumstances inducing and attending the marriage. Wadsworth, the justice who solemnized the marriage, is dead. Mrs. Hutchinson says that prior to the marriage, neither Wadsworth nor any other town officer of Manchester, or any one from Manchester, had ever suggested the marriage; that it was wholly her own matter; that she told Wadsworth she wanted him to marry them; that Gardiner would not give her a certificate; that she had children and desired to be married; that she did not ask his advice, and he gave none. Such a statement

would appeal strongly to a humane man, and might induce him to perform the marriage service without a certificate, to relieve the woman from disgrace, and legitimatize her children, notwithstanding the statute penalty.   She was not then a pauper.   And Wadsworth, even if he knew of this statute, could very well have done what he did, without thought of the question of settlement of one not then, and perhaps never to be a pauper. An honest and humane motive, under the circumstances, and the information communicated to him, is more consistent with the facts than a dishonest and fraudulent one.

It is true, that after Wadsworth had been compelled to pay a fine for marrying without a clerk's certificate of intention, and for failing to return the marriage within the statute period, the town of Manchester reimbursed him his outlay, upon the ground that the marriage had in fact transferred the settlement of the wife from Manchester to Gardiner.   And it is strongly argued that this act of the town is indicative of a previous collusive and fraudulent act on the part of Wadsworth to procure the marriage for that purpose.   But the act of the town is equally consistent with an honest action of Wadsworth in marrying the parties, and the subsequent knowledge of the town that the marriage did in fact change the settlement of the wife, and thereby relieved the town from a possible or probable future liability, and that as Wadsworth had been subjected to loss, it was fair for the town to indemnify him.   It would be going too far to treat this act of the town as satisfactory evidence of the wrongful procurement of the marriage, in the absence of all other evidence, and contrary to the positive testimony of Mrs. Hutchinson that neither he nor any other officer of Manchester, in any way advised, suggested or procured the marriage, but that it was entirely her own act and of her own volition.

In *Minot* v. *Bowdoin*, supra, the jury were instructed, that " if a municipal officer of the town made use of the facts of the situation, either by way of advice, argument, persuasion or inducement, made use of any means to induce the marriage for the purpose of changing the settlement, in such a sense that but for such act of the municipal officer, the marriage would not

have taken place, . . then the marriage was procured by agency of the municipal officer to change the settlement." Of this instruction, this court said, "it determines what is required to invalidate such marriage so far as relates to the settlement of a pauper, and by necessary and obvious implication negatives the the idea that the mere honest giving of good advice would in any way affect such settlement." If Wadsworth knew the marriage would change the woman's settlement, at the time he performed the marriage ceremony, such knowledge would not bring the case within the statute. To have that effect, something must have been done by word or act, which induced the marriage, and without which it would not have taken place.

Upon the evidence, the plaintiff fails to show that the marriage was procured to change the settlement. It follows that the wife took the settlement of her husband, which was in Gardiner.

The case comes to us on report, and there must be,

*Judgment for defendants.*